### In re CLARKE et al.

(Supreme Court, Appellate Division, Second Department. April 10, 1914.)

ATTORNEY AND CLIENT (§ 44*)—DISBARMENT.

The senior partner of a firm of attorneys deposited moneys belonging to a special client into his personal account from which the junior partners drew their compensation. *Held,* that junior partners, who only had a power of attorney to draw checks, were not subject to discipline under Judiciary Law (Consol. Laws, c. 30) § 88, because they received their monthly allowances out of the account without ascertaining whether the acceptance of such allowances would deprive the client of the senior partner of her money.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 55, 56, 62; Dec. Dig. § 44.*]

Motion to discipline Theodore G. Clarke and Edward L. Frost, attorneys. Proceedings dismissed.

Argued before JENKS, P. J., and BURR, CARR, STAPLETON, and PUTNAM, JJ.

Mortimer W. Byers, of New York City, for the motion.
John H. Corwin, of New York City, opposed.

PER CURIAM. We think that no case is presented for action towards the discipline of Messrs. Clarke and Frost. Their relations to Mrs. Hitchings have been considered in a summary fashion both in the civil and the criminal court. In our opinion In the Matter of the Application of Maria D. Hitchings to compel William F. Wyckoff et al., copartners, etc., to pay over certain moneys, decided June 6, 1913 (157 App. Div. 392, 142 N. Y. Supp. 339), we determined that the moneys in question were given to Mr. Wyckoff for investment in bond and mortgage at his discretion and judgment, that the investment made accordingly was paid off and the money again and likewise invested, again paid off, and that such moneys were received by the law firm of Wyckoff, Clarke & Frost, and by it turned over to Mr. Wyckoff in his individual capacity. The present proceeding reveals nothing new except certain features as to the bank account into which the moneys

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

were paid and were kept. It appeared heretofore that the said account stood in the name of Mr. Wyckoff personally. It now appears that from it was paid monthly to the partners the specified sums which they were entitled to draw under their partnership articles. The proposition now is that as Mrs. Hitchings' money was paid into that account, therefore it must have gone into the pockets of Messrs. Clarke and Frost, who are consequently liable to discipline under section 88 of the Judiciary Law.

This account was not only in the personal name of Mr. Wyckoff, but it seems that it was generally controlled by him or by the bookkeeper of the firm. Mrs. Hitchings had been for years the particular client of Mr. Wyckoff; she had no dealings with the other members of the firm, and was practically a stranger to them. It does not appear that they, or either of them, had any knowledge, even, of her transactions or of her dealings with the senior partner. She was but one of the large clientage of the office.

The "new" matter, so far as this court is concerned, is largely presented by the testimony of Mr. Frost before the magistrate. We shall consider the excerpts made in the moving papers. Mr. Frost testified that the running expenses were paid out of that account, and all the fees went in it so far as the "Brooklyn business" of the firm was concerned; that this custom included fees and commissions when interest was remitted; that he had a power of attorney, as had also the bookkeeper; that there were times when Mr. Wyckoff would be absent from the office for days and weeks at a time; that he (the witness) would be there; that all the moneys that came into the firm, with the exception of Mr. Frost's personal clients, went into that account; that he drew therefrom $300 a month; that he never made inquiry when he drew that amount whether the money in that account belonged to a client of Mr. Wyckoff or to the firm; that he knew that in the account were moneys of a client of Mr. Wyckoff, that is, he knew the money went in there; that every six months there would be a division of the so-called profits; that on the division made in July, 1912, he received a check out of this account. On the other hand, even in the excerpts made it appears that all Mr. Frost knew was what sums had gone into this account on account of his own clients; that he never looked into the account; that he never filled out the body of any check against the account; that while he knew the moneys of Mr. Wyckoff's clients went in, he did not know whether there was any of such moneys in the account, how much was there, or how long it remained; that the moneys were divided, as he was told, according to the firm books and their showing of fees and disbursements; that the last division was on January 1, 1913, when the firm was dissolved; that the money then paid came from the Jamaica office of the firm, from an account in the name of the firm, but that the division of July, 1912, came from the said personal account of Mr. Wyckoff, into which the moneys of Mrs. Hitchings had been paid; that he did not then investigate the account, and that he never knew that Mrs. Hitchings' money (some $1,500) was put in the account; and that he never knew that "he took her money."

The firm had been, and at that time was, engaged in a large business,

which comprised dealings for investments in real estate, and stood high in the community. The business was of long standing, apparently prosperous even to the junior partners. The dividends paid to them were modest, and, for aught that appears, warranted in their eyes by the professional activity of the firm. The downfall of the firm was not due to any fault of Mr. Clarke or Mr. Frost. Mrs. Hitchings, as we have said, was one of many clients, and dealt entirely with the senior partner, in whom she apparently placed peculiar trust.

With the question of civil liability we have no present concern, and therefore we refrain from any expression of opinion upon that subject. No one pretends that these gentlemen were guilty of any direct wrongdoing as to Mrs. Hitchings in any way, and the whole front of their offending as now presented seems to be that they did not personally examine this account of the senior partner, whenever they received their monthly dividends, to ascertain whether at that time there was in that account any moneys of any client of Mr. Wyckoff, so that they might compute whether the amount then paid out to them could be met from that account exclusive of any such moneys received by Mr. Wyckoff and kept by him in that account. Under all the circumstances of this case, there is not sufficient proof to indicate that either was derelict in professional duty or guilty of any wrong that would justify discipline or punishment. Weeks on Attorneys, § 314, note citing Porter v. Vance, 82 Tenn. (14 Lea) 629. But these proceedings afford opportunity for the expression of an opinion that it is, to say the least, an unwise and a precarious policy for a lawyer to keep the money of his client in a personal bank account; that the safe practice is to keep such moneys in a separate account which upon its face shows that it is devoted exclusively to moneys received in a fiduciary or a quasi fiduciary capacity. In this very case it appears that Mr. Frost pursued this policy, in that he kept in one trust company such an account, wherein he deposited the moneys of such clients as particularly relied upon him, and in a different bank he kept his personal account.

And we think it but justice to Mr. Frost to state that, so far as all records that have passed under our scrutiny show, he has demeaned himself as an honest and an upright lawyer, seeking to rise above misfortunes which have visited him without his fault, and evincing no disposition to shrink from or to evade any liability which the law of partnership might ultimately cast upon him. And we have no reason to doubt that the same could be said of Mr. Clarke, and should be said, as far as the record shows, which, however, is not as full as to him, inasmuch as he has not been pressed as hard as has his partner.

The proceedings are dismissed.